UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TODD COLLINS, et al.,

        Plaintiff(s),

v.

GEE WEST SEATTLE, LLC,

        Defendant(s).

NO. C08-238MJP

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT: VOLUNTARY DEPARTURE

The above-entitled Court, having received and reviewed

1. Plaintiffs' Motion for Partial Summary Judgment on Voluntary Departure (Dkt. No. 26)
2. Defendant's Response on Cross Motions for Summary Judgment Regarding Voluntary Departure (Dkt. No. 29)
3. Defendant's Motion for Summary Judgment Regarding Voluntary Departure (Dkt. No. 25)
4. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment on Voluntary Departure (Dkt. No. 31)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that Defendant's motion for partial summary judgment on the issue of "voluntary departure" is GRANTED; the Court finds as a matter of law that the employees of Defendant who left their employment between September 26 and October 5, 2007 "voluntarily departed" for purposes of the WARN Act.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment on the same issue is DENIED.

**ORDER ON CROSS-MOTIONS**
**FOR PARTIAL SUMMARY JMT - 1**

**Background**

Defendant operated three new car dealerships, as well as a used car facility, body shop and an auto loan department. On September 26, 2007, Defendant issued an advisory to its employees that it was actively seeking a buyer for the business and that, if no purchaser was found by October 7, 2007, business operations would cease. Gee Dep., Ex. 5.

Prior to the announcement, Defendant had approximately 150 employees. Following the announcement, employee defections began, continuing at such a rate that the General Manager was concerned about whether operations could continue. Gee Dep., 57:17-22, 58:13-17. By the morning of October 5, 2007, only about 30 employees remained throughout all the various facilities. Decl. of Brewer, ¶¶ 6-7. Defendant closed its doors on that day, reopening briefly the following day for inspection by a potential buyer, but then closing permanently thereafter. Id., ¶¶ 8 and 10.

**Discussion**

<u>The WARN Act</u>

The Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 et seq., requires that employers of more than 100 employees must provide 60 days' notice in advance of the shutdown of a site,[1] where that shutdown results in an "employment loss" for 50 or more employees. 29 U.S.C. § 2101(a)(2).

> [T]he term "employment loss" means (A) an employment termination, *other than a discharge for cause, **voluntary departure**, or retirement*. . .

29 U.S.C. § 2101(a)(6) (emphasis supplied). An employment action that results in the cessation of production or work is a "plant closure" even if a few employees remain afterwards. See 20 C.F.R. § 639.3(b).

---

[1] Defendant concedes, for purposes of these motions only, that all the operations comprised a single "site."

**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JMT - 2**

The burden of proof rests with Plaintiffs to prove a prima facie case under the WARN Act. See Johnson v. Telespectrum Worldwide, Inc., 61 F.Supp.2d 116, 121 (D.Del. 1999). If an employer shuts down a plant in violation of the WARN Act, that employer "shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing. . . back pay for each date of the violation. . ." and lost benefits. 29 U.S.C. § 2104(a)(1). An "aggrieved employee" is defined as "an employee who has worked for the employer ordering the plant closing. . . and who, as a result of the failure by the employer to comply with section 2102 of [the WARN Act], did not receive timely notice. . ." 29 U.S.C. § 2104(a)(7).

"Voluntary departure"

At issue in this motion is whether the 120 employees who left their jobs between the announcement of September 26, 2007 and the final closure of the business's doors on October 5, 2007, suffered an "employment loss." By the language of the WARN Act, if the abandonment of their jobs by those 120 employees was a "voluntary departure," then Defendant's actions do not constitute a violation of the statute because (on October 5, 2007, when the business actually ceased operations) fewer than 50 employees would have suffered an "employment loss."

The statute provides no definition of "voluntary departure" and there appears to be little WARN Act case law on point. Plaintiffs argue that "where a company announces a plant closure on less than 60 days' notice, employees who start seeking alternative employment prior to the closure date because their employer failed to comply with the WARN Act have not "voluntarily departed" within the meaning of that statute." Pltfs. Mtn., p. 2.

This argument suffers from several flaws. The Court notes at the outset that the notice which was circulated to Defendant's employees on September 26 was not a "notice of closure:" it was a "notice of possible sale." Only if Defendant could not find a purchaser for the business was the

intention to cease operations. Neither party addresses the issue of whether this constitutes a "notice of closure" for WARN Act purposes. At the very least, it undercuts Plaintiffs' implied argument that the 120 employees who left between September 26 and October 5 were "forced" to leave by the <u>certain</u> knowledge that they would have no jobs after October 7. In any event, the facts are that operations did eventually cease and Defendant does not contest that it failed to give 60 days' advance notice of that closure.

Plaintiffs concede that they have no case authority to support their position regarding whether the 120 employees voluntarily departed. Pltfs. Mtn., p. 14. They cite to a 1989 commentary by the Department of Labor ("DOL") on the Act which states

> DOL does not, however, agree that a worker who, after the announcement of a plant closing or mass-layoff, decides to leave early has necessarily been constructively discharged or quit involuntarily.

54 FR 16048. This language does not constitute an endorsement of Plaintiffs' argument; it states, in effect, that it should not be assumed that an early departure following announcement of a closure is an involuntary departure, which is precisely what Plaintiffs are asking the Court to do.

The commentary defines "constructive discharge" as a situation where "the employer has created a hostile or intolerable work environment or has applied other forms of pressure or coercion which forced the employee to quit or resign." (<u>Id.</u>) This definition does not comport with the facts of this case as they have been developed by the parties and, in fact, Plaintiffs do not argue that Defendant's actions equated to an act of constructive discharge. Plaintiffs also quote a portion of the commentary ("In the situation posted, where the plant closing. . . has been announced. . . the worker has already received the notice that WARN requires and whether his later resignation or retirement is voluntary or not is no longer germane;" <u>id.</u>) which is not applicable to their facts or their argument. Ultimately, the Court finds that the DOL commentary does nothing to advance Plaintiffs' position.

Plaintiffs want the Court to interpret the WARN Act to exclude from "voluntary departure" the situation where an employee, fearing unemployment following a future closure (and only a <u>possible</u> closure under the facts before the Court), leaves of his or her own free will (i.e., is not terminated by the employer or forced out by hostile or intolerable conditions) to seek employment elsewhere. But the Court remains cognizant that "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." <u>Long v. Dunlop Sports Group Americas, Inc.</u>, 506 F.3d 299, 302 (4th Cir. 2007).

"Voluntary" is defined as "[d]one or undertaken of one's own free will." American Heritage Dictionary of the English Language (4th ed., 2009). The pre-closure departure of the 120 employees at issue here is not any less "voluntary" for having possibly[2] been motivated by the belief that they would be unemployed in the near future. The Court finds that an employee who leaves of their own free will prior to the closure of a business has (absent allegations of constructive discharge) "voluntarily departed" for purposes of the WARN Act and has not suffered an "employment loss" as defined by that statute.

<u>Equitable estoppel</u>

Plaintiffs resort to an ancillary "equitable estoppel" argument which is equally unavailing. Their rationale that "a party should not be allowed to benefit from its own wrongdoing" (<u>NLRB v. Advanced Stretchforming Int'l Inc.</u>, 233 F.3d 176, 1182 (9th Cir. 2000)) loses its force in the face of the Court's finding that no wrongdoing occurred. Even were the Court willing to entertain the argument, however, it would fail from lack of proof of the primary element of the claim: that "Gee West knew that a business shutdown would occur within 60 days, but concealed that material fact

---

[2] The record is devoid of any declarations from employees concerning the motivation for their early departure.

**ORDER ON CROSS-MOTIONS**
**FOR PARTIAL SUMMARY JMT - 5**

from its employees." Pltfs. Mtn., p. 12. Plaintiffs have presented no evidence that Defendant knew, 60 days in advance of the closure of its business operations, that it would in fact be shutting down.[3]

There is evidence that Defendant intended its employees to rely on a belief that the business would not close (believing that a host of employee departures would have hampered attempts to find a buyer; Gee Dep., Ex. 5), but no evidence by way of declaration or deposition from the affected employees that they relied on this to their detriment – Plaintiffs merely make the unsupported assertion that "the employees did rely on the concealment by not searching for alternative employment before the announcement of the closure on September 26." Pltfs. Mtn., p. 12.

Plaintiffs are not entitled to summary judgment on the basis of equitable estoppel.

**Conclusion**

It is the finding of the Court that the employees of Defendant's business who left their jobs between September 26, 2007 (the date of the "sell-or-close" announcement) and October 5, 2007 "voluntarily departed" within the meaning of the WARN Act. On the basis of that ruling, the Court further finds that fewer than 50 employees suffered an "employment loss" from the closure of Defendant's business, as defined by 29 U.S.C. § 2101(a)(6)(A). Defendant is not equitably estopped from making this argument, and partial summary judgment will be awarded to Gee West Seattle, LLC on the issue of "voluntary departure."

The clerk is ordered to provide copies of this order to all counsel.

Dated: November _10__, 2009

Marsha J. Pechman
U.S. District Judge

---

[3] The September 26th letter to Defendant's employees does indicate that the employees were not told of the potential closure prior to that date because it would have impacted attempts to sell the business had mass defections occurred, but the document says nothing about <u>when</u> Defendant arrived at the sell-or-close decision. Gee Dep., Ex. 5.

**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JMT - 6**